## Case No. 11,217.
### PLATT v. JEROME.
[2 Blatchf. 186.] [1]

Circuit Court, S. D. New York. April, 1851.

ACCOMMODATION DRAFT — BONA FIDE HOLDER — EVIDENCE OF CONSIDERATION — INQUIRY.

1. J., for the accommodation of M., accepted a draft drawn by M., payable to his own order. In a suit against J. on the draft, brought by P., to whom M. transferred it before due, J. set up that his acceptance was obtained by fraud: *Held*, that a receipt signed by M., expressing a consideration for the transfer of the acceptance to P., was not competent evidence against J. to prove the payment of value by P. for the acceptance.

2. Before the draft was passed to P., it was put by M. into the hands of one B., to negotiate. B. inquired of J. as to the draft, who said it was a business draft and would be paid at maturity. Afterwards, and before taking the draft, P. applied to B. to know what J. had said about the draft, and was told, and then took the draft: *Held*, that P. could not be in any more favorable position, as regarded the inquiries he made of B., than if he had made them of J. himself, in which case he would have been bound to disclose to J. any knowledge he had that J. had been defrauded in giving the acceptance.

3. *Held* further, that if P., when he applied to B., knew that J. had been defrauded in giving the acceptance, such knowledge would affect his title to the draft.

This was an action by [Obadiah H. Platt] endorsee against acceptor, on the following draft:

"$1,678 73. Poughkeepsie, N. Y., March 1st, 1844. Five months after date, pay to my order, at the Union Bank in the city of New York, sixteen hundred and seventy-eight 73-100 dollars, for value received, and place to the account of your obed't servant, Franklin Merrill.

"Mr. Chauncey Jerome, New Haven, Ct."

(Endorsed): "Franklin Merrill. Pay N. G. Ogden, Esq., Cashier. O. H. Platt."

The draft was accepted by Jerome. At the trial, before Nelson, J., in May, 1849, it appeared that the draft in question and several others were accepted by Jerome under an arrangement with Merrill, which was set forth in a receipt given by Merrill to Jerome at the time, as follows: "Received, New York, March 1st, 1844, of Chauncey Jerome, the following notes, which I receive as advances to raise money on for my own business, to purchase

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

wool before the clip, if deemed proper. and funds or wool I agree to put in his hands before the following notes and acceptances fall due, and agree to see the said Jerome harmless from all trouble for so doing, and have given the said Jerome a writing from H. Martin & Co., that this matter is guaranteed by them, that the wool or money shall be in his hands in season to raise or take up the notes and acceptances. I also agree to take the same up myself. Franklin Merrill." To this receipt was annexed a list of notes and acceptances amounting to $17,800, among which was the one in suit, and under the list was written: "The above notes and acceptances I receive as advancement on wool, and agree to save Mr. Jerome harmless, and am to take up the paper myself. Franklin Merrill." The draft in suit was transferred to the plaintiff on the 4th of April, 1844. He on that day deposited it in the Phœnix Bank, New York, for collection, where it remained till maturity, when it was protested for non-payment, and returned to the plaintiff.

The defendant insisted that the acceptance was without consideration, and for a particular purpose, namely, to purchase wool, under the agreement above set forth. He also introduced evidence to show that the acceptance was procured from him by fraud on the part of Merrill. The evidence went to show, among other things, that the firm of H. Martin & Co., mentioned in the above agreement, was insolvent and irresponsible at the time; that a guaranty, signed "Henry Martin & Co.," which was given to Jerome, was signed by one of that firm without the assent or authority of his partners; and that that fact was known to Merrill at the time. The guaranty was as follows: "Mr. Chauncey Jerome, Sir: Any arrangement which you and Mr. Franklin Merrill may enter into in regard to your making advances to Merrill we will hold ourselves responsible for, that the advances shall be met as may be agreed upon between you and him. New York, March 4th, 1844. Henry Martin & Co."

The plaintiff, then, for the purpose of rebutting the defence, offered in evidence a receipt given by Merrill to him, as follows: "Received of O. H. Platt his receipt in full for an account of four hundred dollars, due Reynolds, Platt & White for professional services; also a deed of one hundred and sixty-eight acres of land in Jackson, Mississippi, from said Platt, at a valuation of six hundred and twenty-eight dollars twenty one cents, and six hundred dollars in cash, for which I have placed in his hands and sold to him a draft upon Chauncey Jerome, New Haven, for sixteen hundred and seventy-eight dollars and seventy-three cents, at five months, dated March 1st, 1844, and accepted by him, payable to my order, and endorsed by me, which draft is fair business paper. Dated April 4th, 1844. Franklin Merrill." The defendant objected to the admission of the receipt in evidence, but it was admitted, and the defendant excepted. The plaintiff also showed, that in March and April, 1844, he was an attorney and counsellor at law, in the state of New York, and that, when the above receipt was given, he had an account against Merrill for professional services rendered to Merrill in New York in January, 1844. Merrill died in the winter of 1844.

The plaintiff further insisted that he took the paper on the faith and strength of representations made by the defendant in relation to it. For this purpose, he introduced as a witness one Burr, who testified that he was a broker; that, between the 15th and 20th of March, 1844, he had in his hands for negotiation the draft in question, with a number of other drafts and notes against Jerome, amounting in all to $9,500, all of which he had received from Merrill; that he at that time went to Jerome with the draft, and presented it to him, and he said it was a business transaction, and all right, and that they were all genuine business notes; that he told Jerome he wanted to know if it was all regular, that he might negotiate it; and he replied that it was, that it was a regular business transaction, that the draft was a business draft and was all right, and would be paid at maturity, Jerome having taken the draft into his hands and examined it before he answered; that the witness returned all the drafts to Merrill, having failed to negotiate them; and that, on or before the 1st of April following, the plaintiff called on the witness, and inquired of him in relation to his said conversation with Jerome about the draft, and the witness stated to him the substance of said conversation.

The defendant then introduced evidence to show, that the plaintiff, when he made the inquiry he did of Burr, and when he took the draft, knew that a fraud had been committed by Merrill on Jerome, in procuring the acceptance. Henry Martin, who signed the guaranty, testified that, a short time after he signed it, he became uneasy about it, from what he heard of Merrill, and said so to Merrill; that Merrill then took him to the plaintiff's office, and Merrill and the plaintiff went into a room by themselves, and were there together for some time: that, when they came out, the plaintiff said the guaranty was not binding on the firm, and that that was ten or fifteen days after the witness signed the guaranty.

The court charged the jury that, as to the fraud alleged by the defendant, it appeared that he was to be indemnified by the firm of H. Martin & Co., but that that house was not responsible, and the indemnity given was void and did not bind the firm; that there was ground, therefore, for saying, not only that the acceptance was without consideration, but that there was fraud; that, in this aspect of the case, the burthen would be thrown upon the plaintiff, to show that the paper came to him bona fide and for a consideration; that the plaintiff had set up, as one ground in answer

to the fraud, that he paid a consideration for the draft and in that respect complied fully with the rule of law; that, in this view, he had given in evidence the receipt from Merrill to him; that it appeared, that on the day of the date of the receipt the draft was in the plaintiff's possession, and was deposited by him on that day in the bank for collection; that putting together those facts, with the fact that the plaintiff had an account for professional services, as mentioned in the receipt, the court. though entertaining doubts on the point, was inclined to think the receipt admissible evidence, and entitled to such weight as the jury saw fit to give it; that, as to the proof of consideration given by the plaintiff, the account and land and cash, if they actually existed and were received by Merrill, constituted a valuable consideration, within the meaning of the rule of law requiring proof of consideration where paper has been procured by fraud; that the plaintiff further insisted, that he took the paper on the faith of representations made by Jerome, and was, therefore, not bound to prove a consideration for it, although it was originally obtained from Jerome by fraud; that this point depended on the testimony of Burr; that it was undoubtedly true, that notwithstanding the draft was originally procured by fraud, and under circumstances which would exonerate the acceptor from payment of it, unless it were in the hands of a bona fide purchaser, yet if, at the time, the party taking it inquired of Jerome as to its character, with a view to take it, it became Jerome to put himself on his rights; that if he was then satisfied there was fraud, he should have taken that ground; and that, if he had not discovered the fraud, still if he chose to represent the paper as good paper, he would be bound by the paper, the same as if no fraud existed in its concoction, because the party who inquired was about to take it, and his representations were sufficient to induce him to take it; that, in such case, the person taking it would be entitled to recover, although he did not show affirmatively that he paid full value for it; that if the plaintiff was privy to the original fraud in procuring the draft, he could not recover, but that he would not be affected by any knowledge he might have acquired of Merrill's fraud before he purchased the draft and before he made the inquiries of Burr.

The jury, after being out some time and being unable to agree, came into court and requested further instructions. They inquired whether it was important for the plaintiff to make any other proof of the payment of a consideration than the receipt of Merrill, and if the court considered that good evidence to prove it. The court replied, that the receipt was evidence of the payment of the consideration. The jury further inquired whether, if they believed that the plaintiff did not pay a full consideration for the draft, they were at liberty to find such an amount as they might believe he did pay. The court replied, that if the plaintiff had a right to recover at all,

he had a right to recover the full amount. The jury then further inquired whether, in case they believed the receipt was true, still if they believed that the plaintiff knew when he took the draft that it had been dishonestly obtained, they should then find for the plaintiff or for the defendant. The court replied that, independently of the evidence of Burr, such knowledge on the part of the plaintiff would be fatal to his recovery; but that it would not be. if the jury believed the evidence of Burr that Jerome made the representations alleged, and that the plaintiff took the draft on the faith of them.

The defendant excepted to the several points of the charge. The jury found for the plaintiff, for the amount of the draft, with interest. The defendant now moved for a new trial, on a case.

John E. Burrill. Jr., for plaintiff.

Seth P. Staples and George C. Goddard, for defendant.

NELSON, Circuit Justice. 1. I am of opinion that an error was committed in admitting the receipt of Merrill. of the 4th of April, 1844, as evidence of the payment of value for the acceptance in question by the plaintiff at the time of the transfer to him. It would have been evidence against Merrill, but was not as against a third person, in a case where the fact became material. The question here was, whether or not the plaintiff had actually advanced money or property, or had cancelled an indebtedness from Merrill to him, as a consideration for the transfer of the acceptance. with a view to show that he was a bona fide holder for value. The fact, when material, must be made out, like any other fact in a cause, by competent evidence. Now, the receipt given by Merrill is of no higher evidence than his admission or statement not under oath, which would clearly have been inadmissible, as it respected any one but himself. I entertain no doubt, on reflection. that I erred in the ruling at the trial on this branch of the case.

2. I think an error was committed, also, in the ruling that knowledge, on the part of the plaintiff, of the fraud committed by Merrill in procuring the acceptance from the defendant, would not affect his title to the same, if such knowledge was acquired before he made the inquiries of Burr and received from him the information given by the defendant as to the character of the acceptance. This was carrying the protection of the holder, under the circumstances stated. too far—further than policy or justice requires. even in respect to commercial paper. The plaintiff cannot claim to be in a more favorable position, as it respects the inquiries made by Burr, than if he had himself applied to the defendant for the purpose of ascertaining the character of the acceptance; and then, if he had been aware that a fraud had been committed upon the defendant in the procurement of the paper by Merrill. he would have been bound, in good faith and fair dealing, to disclose the fact, so-

that the defendant might, when he answered his inquiries, be fully possessed of all the circumstances attending the acceptance of the paper.

If the plaintiff knew that a fraud had been committed in procuring the acceptance, he might well have supposed that, when the defendant confirmed it, on the application of Burr, he was not aware of the fact. And, indeed, from the testimony of Martin, the plaintiff had reason to believe that when Burr applied to the defendant for the information, the latter had no knowledge of the fraud committed upon him. The plaintiff became advised of the fraud about the middle of March, for he gave the advice to Martin, professionally, that the guaranty delivered to the defendant, to indemnify him and keep him harmless against the acceptance, was good for nothing. Burr did not make his inquiries, according to the evidence, till a period somewhat later. At all events, the plaintiff had no reason to suppose that the defendant, when he confirmed the paper to Burr, knew what he, the plaintiff, did, namely, that the guaranty was worthless.

For the reasons above given, and upon a careful consideration of the case, I am entirely satisfied that it was not properly submitted to the jury; and, from their inquiries, and the response of the court, it is obvious that the errors led to the verdict that was given. There must, therefore, be a new trial, with costs to abide the event.

[NOTE. At the new trial there was a judgment for the defendant. Case unreported. The case was then taken to the supreme court on error. It was there dismissed upon stipulation. Platt's counsel, who was not a party to the stipulation, subsequently moved to restore the case to the docket. He claimed an interest in the suit. Motion denied. 19 How. (60 U. S.) 384.]