RHEA v. CRAIG.

(Filed May 25, 1906).

*Tenancy in Common—Parol Partition—Statute of Frauds
—Adverse Possession—Instructions.*

1.  In consequence of the statute of frauds, Revisal, section 976, no legal partition can be made between tenants in common without deed or writing, and the doctrine of part performance is not recognized as sufficient to prevent the operation of the statute.

2.  Where, after a parol partition between tenants in common, they severally took possession, each of his part and have continued in the sole and exclusive possession for 20 years without the making of any claim or demand for rents, issues, or profits by any of them upon the others, but recognizing each other's possession to be of right and hostile, the law will presume an actual ouster and a supervening adverse possession, as much so as where the possession was of the whole, instead of a part only.

RHEA *v.* CRAIG.

3. The mere circumstance that the defense of adverse possession originated in a parol agreement did not exclude evidence of the possession under it, nor even evidence of the agreement itself and its attendant circumstances.

4. In a proceeding for partition, a request to charge that if all the tenants in common have been in the continuous, open and notorious possession of some part of the land, then the statute of limitations has not run in favor of either, against the others, but the possession of each is presumed to have been in the interest of all in support of the common title, was properly refused, as it omitted the important element as to the length of the possession.

5. A prayer for instruction as to what would constitute a break in the continuity of possession of a tenant in common, which did not state whether the possession alleged to constitute the break was adverse or by permission or its nature or how long it lasted, was properly refused.

PROCEEDING for partition by H. E. Rhea against J. C. Craig and others, heard by *Judge Fred Moore* and a jury, upon issues raised before the clerk, at the March Term, 1905, of the Superior Court of BUNCOMBE.

The proceeding was for the partition of a large body of land which descended to the parties from their ancestor, James Craig. The defendants admit that they and the plaintiff had formerly been tenants in common of the land, but pleaded that, on April 6, 1868, they had entered into a written agreement which was signed by all of them, and thereby appointed three arbitrators or referees, Patton, Hemphill and Davidson, to meet upon the premises and divide the land among the tenants in common, allotting to each of the parties his or her portion of the same; that the referees did meet upon the land and caused it to be surveyed and platted by T. C. Westhall, a surveyor, and the lines to be marked, and allotted by parol to each of the parties one of the lots or parcels as indicated on the map; that immediately thereafter the several parties went into posses-

sion of the land, each of the part so allotted to him or her, which has been held ever since, that is, for thirty years, openly and adversely to the others and to all the world up to known and visible lines and boundaries, and that by reason thereof the plaintiff and defendants are not tenants in common of the land, but are each sole seized of the portion so allotted to him or her, and so held by adverse possession since the allotment. The court ruled that as the defendants had admitted that a tenancy in common once existed, the burden was upon them to show that it did not now exist, but had been severed, as alleged in their answer. The defendants were thereupon required to open the case. There was much evidence concerning the alleged parol partition of the land —that of the plaintiff's witness, D. C. Stephenson, which bears upon the transactions and dealings of the parties with reference to a partition of the land being sufficient to indicate the general nature of the evidence introduced by the plaintiff as to that matter. He testified, in part, as follows: "The surveyor marked all the lines and corners and located all the shares. The arbitrators set apart to each one his share. We did immediately enter into possession, each of his share, and have remained in the exclusive possession, each of his share, ever since. The land as divided has been ever since assessed against each individual according to his share, and each has ever since paid taxes upon his share. These lines were marked and well known to all the parties and have been recognized ever since by all the parties as lines between the parties. Mrs. Rhea entered into possession of her part at once, has occupied it ever since, cultivating or having it cultivated every year, built upon it and improved it and cleared up a great deal of it, until shortly before she began this suit. She never made any claim to my share or to that of the Craigs, that I ever heard of, until the beginning of this suit. She has never made any claim whatever to my part, and if she ever has to the Craigs', I never heard of it. I know

that she never trespassed upon any of it. I have lived upon my part and cultivated and improved it by building upon it ever since the division, planted an orchard upon it which is still on it, and I would not have moved for $300. I have made as high as $300 on it in one year, that is, on the orchard alone. Neither the plaintiff nor any one else has ever made any claim to my share until the beginning of this suit, although I have lived upon it and made it my home constantly ever since the division. The Craigs have lived upon their shares continuously ever since the division, have improved it somewhat, have cultivated it every year since, and, so far as I know, no claim has ever been made upon it by the plaintiff or any one else until after this suit was brought. They have, since the division and shortly after the division, moved their fences upon the division lines and have maintained them there ever since." There was other testimony tending to corroborate Stephenson and to establish the agreement between the parties to divide the land by arbitration, and to show adverse possession under known and visible boundaries of the several lots since 1869. The referees made no written report of their acts and proceedings. There was only the written submission, signed by the parties, the survey and plot of the surveyor showing the location and lines of the different lots, and the evidence as to the continuous and adverse possession of each party of his or her lot, as already stated. The plaintiff introduced evidence tending to show that there had been no such partition of the land as would bind her, and no adverse possession of each of the tenants with respect to the portion of the land alleged to have been allotted to him or her, but that they had occupied the premises indiscriminately as tenants in common and without reference to any division of the same. There was evidence on the part of the defendants that at the time of the survey, Westhall, the surveyor, prepared deeds for the parties to execute, so that they could convey to each other

the several lots according to the allotment, and that the plaintiff refused to sign the deed prepared for her, and that the defendants were always able, ready and willing to execute the deeds prepared for them. There was also evidence that the plaintiff had used and cultivated the land allotted to her and cut timber thereon. Some of the original defendants have died since the proceeding was brought, and other parties brought in. When reference is made to the defendants in connection with the transaction in 1868, the original defendants are meant.

The court charged the jury fully upon the facts as the jury might find them from the evidence, and especially as to the effect of the agreement of the parties, the survey and allotment and the subsequent adverse possession of the lots by the parties, and among other instructions the court gave the following: "1. If the jury shall find from the evidence that there was a division of the land in controversy among the tenants in common, as alleged in their answer, and that the lines and boundaries fixed by the division were run and marked by the surveyor, and, further, that each of the tenants in common entered into his or her share or part allotted to him or her, as alleged in the answer, claiming the same up to the lines and boundaries fixed by the division and claiming the same adversely to each other and all other persons, and that they remained continuously for twenty years or more in such adverse possession so claiming up to the lines and boundaries, then the law would vest the title to such shares or parts in such tenants in common so having entered upon and remained in possession of the same. Therefore, if the jury shall find from the evidence that there was such entry and such possession by the tenants in common, and that the same continued uninterruptedly for twenty years or more, then the jury should answer the first issue in favor of the defendants and against the plaintiff, that is, they should answer the first issue 'no.' 2. If the jury shall

find from the evidence that the original defendants entered into the adverse possession of such shares of the land in controversy as had been allotted to them, after a division of the same among the tenants in common, if they find there was such a division, and that while in such possession the plaintiff did by permission of the defendants so in such adverse possession, at any time enter upon or cultivate any part of the land, cut and remove timber therefrom or do any other act thereon by permission and consent of such defendant being so in possession, then such act or entry, cultivation or cutting timber or other act, would not interrupt or disturb the adverse possession of such tenant in common so holding his share adversely to the other tenants in common." The plaintiff had requested the court to charge the jury as follows: "1. If the jury should find from the evidence that all the tenants in common of the land, as alleged in the petition and admitted in the answer, have been in the continuous, open and notorious possession of some part of the land, the petitioner having been in possession of one part thereof, the heirs of William Craig of another part thereof, and Daniel Stephenson and his heirs of another part thereof, then the statute of limitations has not run in favor of either of the tenants in common against the others, but the possession of each is presumed to have been in the interest of all the tenants in common and in support of the common title. 2. If the jury shall find from the evidence that the heirs of William Craig have been in possession, within less than twenty years, of a part of the land which was surveyed by Westhall as the part to be allotted to the petitioner, then such possession by said defendants has destroyed the continuity of the possession of the petitioner, and no presumption of partition will arise by reason of their possession of that part of the land claimed by them, and their title to the land claimed by them will not be ripened thereby, and, on the other hand, if the jury shall find from the evidence

that the petitioner has been in possession of a part of the land surveyed by Westhall as the part to be allotted to Daniel Stephenson, such possession by the petitioner of said part will break the continuity of the possession of Daniel Stephenson and his heirs, and will prevent their possession from ripening the title of Daniel Stephenson and his heirs to that part of the land claimed by them." These instructions were refused and the plaintiff excepted. The plaintiff also excepted to the charge of the court upon the ground that there was no competent evidence before the court of any division or allotment of the land among the tenants in common or that the lines and boundaries were run and marked by the surveyor. Issues were submitted to the jury which, with the answers thereto, are as follows: "1. Are the plaintiff and the defendants tenants in common and in possession of the land described in the petition or complaint, as alleged in the said complaint or petition? No. 2. Are the defendants, Julius C. Craig and William H. Craig, the owners of the tract of land referred to in the answer and designated as No. 2 on the plat attached to the answer, as alleged in the answer? Yes. 3. Are the defendants, A. L. Stephenson and others, who claim under D. C. Stephenson, the owners of the tract of land referred to in the answer and designated as No. 3 on the plat attached to the answer, as alleged in the answer? Yes. 4. Is the plaintiff, Harriet E. Rhea, the owner in severalty of the two tracts of land described in the fifth paragraph of the answer and designated as No. 1 and No. 1 A on the plat attached to the answer, as alleged in the answer? Yes." Judgment was entered on the verdict for the defendants and the plaintiff appealed.

*Geo. A. Shuford, Peele & Maynard* and *Locke Craig* for the plaintiff.

*Chas. A. Moore* and *Shepherd & Shepherd* for the defendants.

RHEA v. CRAIG.

WALKER, J., after stating the case: We do not think this case presents any unusual, and certainly not any extraordinary features. It can be decided upon correct principles if we will but bear in mind the nature of an estate in common and its ordinary incidents. Tenants in common hold by unity of possession and are deemed to be seized *per my* and not *per tout*. They may hold by several and distinct titles, or by title derived at one and the same time by the same deed or descent. But however the estate is created, whether by act of the party, or by descent or act of the law, they properly take by distinct moieties and are seized of separate and distinct freeholds, which is a leading characteristic of this relation. 4 Kent (13 Ed.), 367. One of the incidents of the estate is the right of each of the tenants to compel partition which was given by the statutes of Henry VIII and William III, though it did not exist at common law, according to Blackstone. 2. Blk., 194. Partition at common law might be made by tenants in common by parol, with a feoffment or any written instrument evidencing the partition. But if by parol, it must have been with livery of seizin, and this is because the tenants have several freeholds. *Anders v. Anders,* 13 N. C., 529. "If two tenants in common be, and they make partition by parol and execute the same in severalty by livery, this is good and sufficient in law." Coke, 139a; 1 Gr. Cruise, Title 20, sec. 30. But in consequence of the Statute of Frauds in England, 29 Charles II, and in this State, Act of 1715, Revisal, sec. 976, no legal partition can now be made between tenants in common without deed or writing *(McPherson v. Seguine,* 14 N. C., 153; *Medlin v. Steele,* 75 N. C., 154), though it is said that an agreement in writing to make partition will have the same effect, in equity, as an actual partition at law. 1 Gr. Cruise, *supra;* Eaton Equity, 606. It has also been decided in some of the States, following the English rule, that where the partition has been made by parol agreement

of the tenants and each has taken possession of his part or share and occupied it in severalty for a less period than is required to ripen title by adverse possession under the statute of limitations, a court of equity will recognize and enforce the agreement and decree it to be valid and effectual for the purpose of concluding the right of the parties, as between each other, to hold their respective parts in severalty. *Goodhue v. Barnwell,* Rice Eq., 198; *Ebert v. Wood,* 1 Binney, 218; *Wood v. Fleet,* 36 N. Y., 499. But those decisions, and many others to be found in the books, are based upon the doctrine of part performance which is not recognized by us as sufficient to prevent the operation of the statute of frauds. *Ellis v. Ellis,* 16 N. C., 341; *Allen v. Chambers,* 39 N. C., 125; *Barnes v. Teague,* 54 N. C., 277. So that the judgment of the court below, if correct, must be sustained upon some other principle.

It has been generally held, we believe, that where land has been divided among tenants in common by parol and the tenants have gone into possession of their several and respective shares in accordance with the agreement and have held possession of the same under known and visible boundaries, consisting of lines plainly marked on the ground at the time of the partition, and such possession has continued openly, notoriously and adversely for a sufficient time, under the statute of limitations to bar a right of entry or of action, each of the tenants recognizing the right of the others so to hold and claiming the right to hold and possess the share allotted to him in his own right and in severalty and to exclude his co-tenants from any right or participation therein, the possession thus acquired and held will vest a good and perfect title to such share in him. *Hazen v. Barnett,* 50 Mo., 506; *Slice v. Derrick,* 2 Rich., 627; *Gregg v. Blackmore,* 10 Watts., 192; *Haughabaugh v. Honald,* 53 S. C. (3 Brev.), 98; *Tomlin v. Hilyard,* 43 Ill., 300. There does not seem to be any case in our reports presenting the identi-

cal question we have here. In *Anders v. Anders, supra,* the question was not decided and could not have been, as the title descended to the tenants in common from their father in 1814 and the case was heard in this court in 1830, so that there had not, at the latter date, been a sufficient length of possession by the tenants of their several portions to bar each other's rights. There were other circumstances in the case which prevent it from being an authority either way. We do not see why our case is not governed by the general principle long established in this court, that where there has been an exclusive possession by one tenant of the common property for twenty years without any demand or claim for an account of rents, issues or profits from his co-tenant, and without any acknowledgment on his part of title in said co-tenant, the law in such a case raises a presumption that the sole possession was rightful and will protect it, and where the tenant out of possession brings ejectment, his entry will be considered as tolled and his right of action will be barred. *Cloud v. Webb,* 15 N. C., 290; *Black v. Lindsay,* 44 N. C., 467; *Thomas v. Garvan,* 15 N. C., 223; *Covington v. Stewart,* 77 N. C., 148; *Neely v. Neely,* 79 N. C., 478; *Whitaker v. Jenkins,* 138 N. C., 476; *Bullin v. Hancock,* 138 N. C., 198, and *Dobbins v. Dobbins,* at this term, where the cases are collected and reviewed. If the parol partition left the tenants in common with undivided interests in the shares allotted to each of them, still it must be conceded that if they severally took possession, each of his or her part, and have continued in the sole and exclusive possession ever since the allotment was made without the making of any claim or demand for rents, issues or profits by any of them upon the others, but recognizing each other's possession to be of right and hostile, the law will presume an actual ouster and a supervening adverse possession as much so as in the other cases where the possession was of the whole instead, as here, of a part only. When there is the same reason there

must be the same law.  Indeed, in this case, the principle
of the authorities cited should more strongly apply, for when
there is possession of the whole it is more consistent with the
rule that the possessor is presumed to hold for the benefit of
his co-tenant, as well as for his own, than when the posses-
sion is only of a part allotted under a division of the land,
by consent and agreement of all, for, though, in the latter
case the tenants in the eye of the law still own by moieties
in that part, the intent of the possessor to hold for himself
to the exclusion of his fellow is, in fact, the more manifest.
The technical relation is not altered, it is true, in the one
case any more than in the other, until the bar takes place
by sufficient length of possession, but the circumstances of
the possession and the attitude of the parties, where there
has been an allotment followed by possession in conformity
therewith, impart greater force and conclusiveness to the
presumption by which the entry of the co-tenant is tolled.
It is more in the nature of an actual assertion of right to
the sole possession, in denial of all right in the other tenant,
and is therefore really adverse, though not theoretically so,
as the law, until a certain time elapses, regards the estate
in the part so held as still undivided and the possession as
promiscuous and not several, just as it does in the other case
where the presumption arises from the sole receipt of the
rents and profits and the inaction or supineness of the tenant
out of possession.

  This brings us to consider the charge of the court and the
refusal to give the instructions requested.  We think the
court instructed the jury fully as to what facts were neces-
sary to be found by them in order to bar the plaintiff's re-
covery.  A charge could not be more explicit in that respect.
The exception that there was no legal or competent evidence
upon which to base the separate instructions is clearly not
tenable, as the court did not declare that the parol partition,
even when followed by possession of the several parts of the

land for a less period than twenty years, was sufficient, and therefore the objection that the agreement was forbidden by the statute of frauds and the oral evidence of it was incompetent falls to the ground. It was necessary to show the facts constituting the possession, the manner of acquiring it and the length of it, in order to raise the presumption of an ouster or of a deed and thus to defeat the plaintiff's claim to partition. The mere circumstance that the defense originated in a parol agreement did not exclude evidence of the possession under it, nor even evidence of the agreement itself and its attendant circumstances. The right to prove these facts rests upon a principle of law, as we have shown, quite distinct from any arising out of the statute of frauds. Nor do we think the jury were misled as to what their verdict should be if they should find that the defendants had not, by the greater weight of the evidence, made out their case. The court had properly placed the burden of the issues upon them and the jury must have understood from a consideration of the whole charge that, in the event supposed, they should answer the issue in favor of the plaintiff. There was ample evidence as to the marking of the lines.

The plaintiff's first prayer for instructions should not have been given, as it was misleading. It did not direct the minds of the jury to the true issues involved and was too narrow to be given without explanation. The instruction incorporated in the prayer omitted the important element as to the length of the possession and was therefore incomplete. It was not the contention of the defendants that the possession of a part of the land by one tenant in common was not presumed to be in the interest of all, but whether the possession had been so long continued as to bar the right to a partition. The instruction requested in the second prayer is equally erroneous as that contained in the first, for it does not state whether the alleged possession within less than twenty years of the part allotted to one of the co-

tenants by another of them, was adverse or merely by permission of the former, nor does it state what was the nature of the possession or how long it lasted, so as to show that it was of a kind which would break the continuity of the possession relied on to bar the plaintiff's right to partition. The gist of the whole defense is that the right and title of the tenants in common to their shares in severalty have accrued by reason of the exclusive occupation by each of the tenants of his own part, each claiming, as his alone, the part agreed to be his, and the others not disputing that claim, and each taking, as his alone, the product of his own part, except where by his permission others may have been allowed to enjoy it, but on the faith of the agreement. Unless we could see that the fact upon which the proposed instruction is based would, if found by the jury, prevent the estate in common from being turned into one in severalty by an otherwise exclusive and continuous possession for twenty years, we cannot say that the judge below erred in refusing to give the instruction. It is not clear that the possession, as stated in the instruction, was not taken under claim of right or was not temporary and permissive. Without a more definite statement of the nature of the facts relied on, the instruction requested would have tended more to confuse than to enlighten the jury.

We find no error in the rulings and judgment of the court.

No Error.