WILLIAM SPRINKLE et al. v. C. S. HOLTON et al.

(Filed 4 December, 1907).

1. Executors and Administrators—Wills—Power of Sale—Deeds and Conveyances—Distributees—Interests—Merger.

When an executor, acting under the power conferred in the will, sells lands of his testator and takes a note secured by a mortgage for the purchase price, the interest of the devisees and legatees in the lands merge into the note, and cannot be reinstated in the land without the consent of all parties to the transaction.

2. Same—Distributees, Paid and Unpaid—Agreement to Convey—Deeds and Conveyances—Cancellation.

An executor, with authority under the will to sell lands of his testator, having sold them to the widow and received as payment a note and mortgage which were not paid, and judgment was had thereon, may by deed convey the land to the widow and all the unpaid distributees under the will, in accordance with an agreement, recited in the conveyance, made between them, good against such of the distributees who have received their share of the assets.

3. Same—Wills—Distributees, Paid and Unpaid—Deeds and Conveyances—Cancellation—Solvency.

A deed made by an executor to lands of his testator will not be set aside, in the absence of collusion or fraud, at the instance of some of the distributees claiming they have not received their full share of the assets, when it appears that the executor is solvent and has other assets out of which they could recover any amount to which they could show themselves entitled.

4. Same—Wills—Distributees, Paid and Unpaid—Accounting.

A legatee who has received only his distributive share of the estate of his testator is not liable to an account from another distributee who claims that he has not received the full amount of his share.

(A discussion of the question of subrogation of a legatee to the rights of the executor under certain circumstances, and of the doctrine of acquiescence in an agreement contained in a registered conveyance by lapse of time, by CONNOR, J.).

CIVIL ACTION, tried before *Ward, J.,* and a jury, at March Term, 1907, of the Superior Court of MECKLENBURG County.

The plaintiff's evidence, the material parts of which are of record, discloses this case:

Thomas J. Holton died 27 December, 1860, having first made and published his last will and testament, in which he made the following disposition of his estate:

"Item 1. I will, devise and bequeath my whole estate, real and personal, including my choses in action, to my friend, Ebenezer Hutchison, in trust, primarily, for the payment of all my debts, and, secondly, for the equal use and benefit of all my children, subject, nevertheless, to the reservation on the part of my beloved wife, Rachel, of the same rights in my estate to which she would have been entitled under the law of North Carolina in case I had died intestate, hereby investing said Hutchison with full power and authority to make such disposition by sale of all or any portion of my estate, either publicly or privately, as he may deem most judicious for the promotion of the interest of my creditors and that of my children by way of distribution.

"Item 2. I hereby nominate and appoint my said friend, E. Nye Hutchison, sole executor of this my last will and testament."

The will was duly admitted to probate, and the executor qualified according to law. The testator left surviving his widow, Rachel Holton, who dissented, and dower was duly allotted to her; Mary, who married plaintiff William Sprinkle, and died, leaving the plaintiffs Walter Sprinkle, Thomas H. Sprinkle and Mary S. Bentheim, her heirs at law, and plaintiff Sarah, who intermarried with J. L. Deaton; defendants Charles S. Holton, Harriet Holton, Rachel (who intermarried with Crisp), Edwin Holton, Harrison Holton and Virginia, who died intestate and without issue.

Thomas J. Holton, at the time of his death, was the owner of several lots of real estate, all of which, except that allotted to the widow as dower, were sold by his executor, pursuant to the power conferred by the will. He also sold the personal property. After paying the debts, he paid to the children, Mary, Sarah and Harrison, in Confederate money, the sum

remaining in his hands, less a small amount.  The testator owned two lots in the city of Charlotte, which the executor sold at public auction, 13 October, 1863, to the widow, Rachel Holton, for the sum of $3,592.05.  To secure the purchase money she executed her note, with personal security, the executor retaining the title until the note was paid.  The lots brought a fair price.  At October Term, 1869, of the Superior Court of Mecklenburg County the executor obtained a judgment on the note against said Rachel and her security. On 3 July, 1872, he filed an account in the Superior Court of Mecklenburg County, showing the manner in which he had administered the estate.  It appears from said account that, after paying the debts, he had paid over to the plaintiffs Mary and Sarah and to defendant Harrison, in Confederate money and by sale of property, amounts aggregating more than the judgment against Rachel Holton.  It also appeared that he had not paid to the other or younger children any amount whatever.  On 1 October, 1872, the executor executed a deed, the material parts whereof are as follows:

"This indenture, made and executed this 1st day of October, in the year of our Lord eighteen hundred and seventy-two, by and between E: Nye Hutchison, executor of the last will and testament of T. J. Holton, deceased, of the city of Charlotte, county of Mecklenburg, State of North Carolina, of the first part; Rachel R. Holton, of said city, county and State, of the second part, and Charles S. Holton, Edwin J. Holton, Hattie C. Holton and Rachel Holton, *herein,* all of said county and State, of the third part.

"Whereas, at a sale of the real estate of the said T. J. Holton, pursuant to the will of said testator, by the party of the first part, the said Rachel R. Holton became the purchaser of two lots, viz., one situated in the city of Charlotte aforesaid, on the northeast corner of Trade and College streets, fronting 99 feet on each of said streets, with the *alternate* lines parallel to the same and of the same length, and one other in

said city, on the northwest corner of Trade and B streets, lying between B Street and the dower lines of said Rachel R. Holton, and on which she resides, fronting 76 feet on Trade Street, and on B Street 198 feet, with alternate lines parallel to the same and of corresponding lengths with those on said streets, and gave her note therefor, the title being retained until the said note should be paid. And whereas the parties of the third part have this day paid to the party of the first part the sum of $3,592.05, each paying one-fourth of said sum, in discharge of a judgment rendered and now docketed in the Superior Court of Mecklenburg County on the note given as aforesaid for the purchase of said two lots. And whereas the said payment has been made by an arrangement and agreement between the parties of second and third parts, and this deed of conveyance and all its provisions, limitations and conditions are made in conformity with said arrangement and agreement as settled and determined by and between themselves:

"Therefore, this indenture witnesseth, that the party of the first part, for and in consideration of the said sum of $3,-592.05, paid as aforesaid by the parties of the third part, and with the consent and agreement of the party of the second part, and for the further consideration of the sum of $5 in hand paid by the party of the second part," etc.

He proceeds to convey to the said Rachel in fee the second lot described in the preamble, and the first lot (being the lot described in the complaint) to the said Rachel for life, remainder to the defendants herein, with certain contingent limitations, etc., not necessary to be set out here. This deed was duly proven and recorded in the office of the Register of Deeds of said county, 2 January, 1873. The said Rachel and the defendants took possession of said property and remained therein until her death, 22 November, 1905, the defendants continuing to hold the possession. The plaintiffs introduced the deposition of Dr. E. Nye Hutchison, the execu-

tor, who, upon cross-examination, said that the deed was executed pursuant to and in execution of a settlement made between Rachel Holton, the younger children, represented by Mr. H. W. Guion, and himself, represented by Mr. Joseph H. Wilson, members of the bar; that upon examination it was found that the older children had received a sum from their father's estate larger than the interest of the younger children in the judgment against Rachel Holton; that when he made the deed he considered it a final settlement of the estate. There was no suggestion of any fraud in the transaction. The defendants have put valuable improvements on the lot conveyed to them, and have executed deeds in trust to secure indebtedness to defendants, trustees of the Union Theological Seminary, W. S. Alexander, trustee, and the Southern Real Estate, Loan and Trust Company. Their interests are not, however, affected by this litigation. The plaintiffs demand judgment that the deed of 1 October, 1872, be declared invalid; that the plaintiffs and defendants be adjudged to own the property as tenants in common, and for other relief. Defendants, among other defenses, plead the several statutes of limitations.

His Honor, being of the opinion that plaintiffs were not entitled to recover, rendered judgment of nonsuit. Plaintiffs excepted and appealed.

*W. J. Montgomery, Chase Brenizer* and *Maxwell & Keerans* for plaintiffs.

*Clarkson & Duls, R. S. Hutchinson* and *Burwell & Cansler* for defendants.

CONNOR, J., after stating the case: There can be no doubt that, under the terms of the will of Thomas J. Holton, the executor was empowered to sell all the real estate; hence the sale of the lot in controversy to Rachel Holton was valid, and constituted, upon the execution of the note, a binding contract, whereby she acquired an interest in the property enti-

tling her to call upon the executor for a deed by paying the note. It is equally clear that the note in the hands of the executor constituted an asset or fund, to be distributed in accordance with the will of Holton. The interest of the plaintiffs and defendants, devisees and legatees of Holton, in the lot was merged into the note. Only by a cancellation of the contract and of the note could their interest in the property be reinstated; this could only be accomplished with the consent of all parties in interest. The executor was in the line of his duty when he obtained judgment on the note. His next step in the settlement of the estate was to subject the lot to sale for the purpose of paying the judgment. If he had done so, it is manifest, from the state of his account, that it would have been his duty to pay the proceeds to the younger children, the defendants herein, who had received no part of their share of the estate. Any surplus from the sale of the lot would have belonged to Mrs. Rachel Holton. In this condition of the estate, the executor, the widow and the four younger children, acting under the advice of counsel, made the arrangement pursuant to which the deed was executed. We do not see how the plaintiffs can justly complain of the terms upon which this deed was executed or the settlement made, or how any wrong was done them, entitling them to have the deed invalidated. If the executor had received from Rachel Holton the money and immediately paid it to defendants and she had conveyed to them an estate in fee, reserving a life estate, there can be no doubt that their title would have been perfect. We do not perceive any substantial difference in the two transactions. It is conceded that the executor is solvent, and if by the arrangement made he paid to defendants a larger amount than they were entitled to, he, and not the defendants, is liable to plaintiffs. It appears from the record, not only that the executor is solvent, but that, at the time the deed of 1 October, 1872, was made, there was other property of the estate from which the plaintiffs could have re-

ceived any sum to which they might have shown themselves entitled by reason of the payment to defendants of the amount of the judgment against Rachel Holton. It also appears that, after the death of Mrs. Holton, the reversion in the dower was sold, upon petition of plaintiffs and defendants, for $14,000, and, by consent of all parties, divided equally. While, in the view which we take of the case, all of this is immaterial, it is manifest that, if it be conceded that by the execution of the deed the defendants received more than their fair share of the estate, the plaintiffs have no equitable ground upon which to cancel the deed. They suggest that the sums paid them in Confederate money should be "scaled" and they be charged with the amount which it was worth in gold. While no case is cited in which this Court has held that such is the principle upon which the estate should be settled, if it be conceded that the plaintiffs' view is correct, and if it be further conceded that the plaintiffs have any cause of action against defendants, it certainly could not extend to the cancellation of the deed of 1 October, 1872. The only possible liability to which they could be subjected would be to pay to plaintiffs an amount which, together with what they have received otherwise, would make an equal distribution. It is well settled that a legatee who has received no more than his legal share of the estate is not liable to account to another legatee who, by reason of a *devastavit* of the executor, fails to receive his full share. His remedy is against the executor. The one who receives but what belonged to him has done the other no wrong. There is a line of cases which hold that if, by mistake as to the condition of the estate, the executor pay to one legatee more than his share, or if by some unforeseen cause for which the executor is not responsible and could not have reasonably anticipated, it turns out upon a final settlement that he has overpaid some of the legatees, he, after making good to the other legatees their share, may have relief in equity against the overpaid legatees. But the court will

grant such relief only when it clearly appears that the executor was unable to foresee the "peculiar circumstances" by reason of which the mistake occurred. *Alexander v. Fox,* 55 N. C., 106; *Lambert v. Hobson,* 56 N. C., 424. It may be that, if the executor is insolvent and the legatee has suffered loss under circumstances which would have entitled the executor to relief in equity, such legatee would be subrogated to the rights of the executor. No such condition is shown here, for the reason that there were ample resources of the estate from which equality could have been secured, and that, with the concurrence of the plaintiffs, they have been distributed. While not technically an estoppel, the conduct of the plaintiffs in this respect is very cogent evidence of acquiescence in the settlement made by the executor with the defendants, and a recognition of the fact that, as understood by him, the execution of the deed was a final settlement. The deed setting forth the terms of the settlement was recorded 3 January, 1873. Thirty-three years elapsed during which no action was taken by plaintiffs. During this time the widow and the defendants were in possession of the property, making valuable improvements upon it, executing mortgages and in all respects treating it as their property, in a manner consistent with the terms of the deed and inconsistent with any trust relation. The fact that the widow had a life estate did not in any manner affect plaintiffs' right to sue. If the deed was invalid, she had no better right under it than the defendants. The authorities cited by counsel fully sustain their position that the defendants took and held with notice of the provisions of the will, but they took and held in accordance with the will. If executing the deed was a breach of trust by Dr. Hutchison, the cause of action therefor accrued to plaintiffs at once. They had full notice of what he had done, and for thirty-three years acquiesced in it. To permit them now, after the property has been improved by defendants and increased in value, to attach a trust to the legal title

and set aside the settlement, would be doing violence to an unbroken current of decided cases and sound equitable principles. We have no doubt, after a careful inspection of the record, that Dr. Hutchison, under the advice of gentlemen eminent at the bar for learning and of high personal and professional position, has discharged his duty and executed the trust reposed in him with fidelity. The settlement was made without the slightest suggestion of a breach of trust, and put upon the public records. The plaintiffs, with full knowledge of it, by their silence for a third of a century, recognized its justice. The security of property rights, the peace of families and the public welfare demand that there must be an end of litigation. Courts of equity have always wisely refused to entertain "stale claims." *Harrison v. Hargrove,* 109 N. C., 346.

The judgment of nonsuit must be
Affirmed.