This is an action brought by plaintiffs against certain of the defendants to restrain the sale of land (describing same), in which plaintiffs with their brothers and sisters (afterwards made parties defendant) claim a one-fifth interest. The restraining order was continued to the hearing. The facts of record are as follows: (1) W. G. Whichard, of Pitt County, N.C. died about 1875 intestate, seized and possessed of some 500 acres of land in Pitt County known as his "Home Place." He left surviving him five children — Ashley Whichard, W. A. Whichard (who married J. G. Taylor), M. L. Whichard (who married John W. Martin), and M. R. Whichard (who married J. J. Jones), and F. M. Whichard. On 7 December, 1882, Ashley Whichard and wife conveyed their interest in the land to John W. Martin, the deed being duly recorded.
It is alleged in the answer of appealing defendants: "That in the early fall of 1885 the children of W. G. Whichard above named, except Ashley Whichard and John W. Martin, entered into an agreement to divide the W. G. Whichard land among the said children of W. G. Whichard and John W. Martin, the said John W. Martin taking one share or a *Page 439 
child's part, he having purchased the share and interest of Ashley Whichard in said W. G. Whichard land. That they agreed to make a mutual partition or division among themselves, and to pass deeds to each other, instead of partition by special proceeding in court. That, pursuant to said agreement, the said children and John W. Martin called in Willis Whichard, a prominent citizen of the county and who was also a surveyor, and Marcus Manning, a surveyor, and had them to survey and divide said land equally and fairly among said children and John W. Martin, he representing one share and interest as above stated. That they proceeded to divide said land in five shares or lots, each share adjoining or running to the run of Grindal Creek on the north, and said shares or lots were numbered 1, 2, 3, 4, and 5. That said children and John W. Martin drew for said land and John W. Martin drew lot 1; W. A. Whichard drew lot 2; M. R. Whichard drew lot 3; M. L. Martin (who married John W. Martin) drew lot 4, and F. M. Whichard drew lot 5. That the said Willis Whichard drew the said division deeds and all of said children, including M. L. Martin, signed the said deed to John W. Martin for lot 1; and all of said children, including John W. Martin and wife, signed a deed to W. A. Whichard for lot 2; and all of said children, including John W. Martin and wife, M. L. Martin, signed deed to M. R. Whichard for lot 3; and all of said children, including John W. Martin, signed deed to M. L. Martin for lot 4; and all of said children, including John W. Martin and wife, M. L. Martin, signed deed to F. M. Whichard for lot 5. The said deeds were all executed on 9 September, 1885, and all acknowledged before E. A. Moye, C. S.C., on the same day and ordered recorded by him; and all of said deeds recorded in Book I-4 of the Pitt County registry. . . . The plaintiffs contend that the defendant's title is defective, for that the certificate of probate of E. A. Moye, clerk of the Superior Court of Pitt County, in probating the deed of F. M. Whichard, M. L. Martin et als. to John W. Martin, recorded in Book I-4, page 505, of the Pitt County registry, does not show that M. L. Martin was privately examined, nor that the clerk found the facts required to be found by sec. 2515 of the Consolidated Status of North Carolina. Defendant John W. Martin, opposing defendants' contentions, alleged that it was not necessary to put title in John W. Martin, as he took a child's part from Ashley Whichard and wife by deed, as above set out, and this particular deed did not pass title to John W. Martin, it simply allotted to him and fixed his possession and restricted his possession to that which was already his, and that was the case with the other tenants in common receiving deeds. That M. L. Martin took and accepted a deed for Lot No. 4 signed by John W. Martin and the other tenants in common, and she joined in the deeds to the other tenants in common, *Page 440 
and she was bound by her action, and was estopped to claim any part of Lot No. 1 deeded and assigned to John W. Martin as long as she took and held Lot No. 4, which she did, and her children, including the plaintiffs, are estopped to now question or attack said deed or to claim any interest in the land described and allotted and conveyed in said deed; and the defendant pleads the said action of M. L. Martin as a complete bar and estoppel against the plaintiffs and the other children of M. L. Martin to claim or recover anything in this action."
Thereafter, on 15 January, 1895, the said M. L. Martin conveyed her said Tract No. 4 to J. J. Jones. "That said deed was for a valuable consideration set out in said deed; that her husband, John W. Martin, joined with her in said conveyance; that it was duly probated with her private examination and recorded, and the grantee went in possession under said deed, and he and his assigns have since held said land. That the said M. L. Martin, having entered into said partition agreement with her cotenants in common, as above set out, and having executed deeds to her said co-tenants in common, including the deed to John W. Martin, the deed in question, and having accepted deed from her cotenants in common for Lot No. 4, said W. G. Whichard land, and having accepted the same and held the same for more than seven years, nearly ten years, and having then sold the same by proper deed to J. J. Jones, she estopped herself to claim any right or interest in Lot No. 1 conveyed to John W. Martin, or to claim any right or interest in the lots of land conveyed and allotted to the other tenants in common, and she never did claim or assert any right or interest in lot 1 assigned and deeded to John W. Martin, nor to any of the other lots assigned and deeded to the other tenants in common, and she died in 1902. That the plaintiffs and the other children of M. L. Martin are likewise estopped by the said action of M. L. Martin above set out to claim or hold any rights or interests in the said Lot No. 1 allotted and deeded to John W. Martin as above set out; and the defendant pleads such acts and deed of M. L. Martin as a complete bar and estoppel against the plaintiffs and the other children of M. L. Martin to maintain this action. That the defendant John W. Martin has held the land in question in absolute and adverse possession, in his own right and under known and visible lines and boundaries, for 50 years, and under colorable title during said term of 50 years, and he pleads such adverse possession under known and visible lines and boundaries and under colorable title in bar to any recovery against him in this action. And on account of the adverse possession of the defendant for the term above set out he pleads the 20-year statute of limitations and the 7-year statute of limitations in bar of any recovery by the plaintiffs or any of the children of M. L. Martin." *Page 441 
The defendant John W. Martin, together with his wife, Laura Martin, whom he married after the death of M. L. Martin (his first wife), made a deed of trust to W. J. Bundy, trustee, to secure certain indebtedness. The defendants Baugh Sons Co. and W. J. Carson are holders of notes secured by the deed of trust.
Defendants pray, in part: "That the action be dismissed at the cost of the plaintiffs, and that the defendant John W. Martin be adjudged the sole and absolute owner in fee simple of the tract of land in controversy, subject to the deed of trust in question."
The judgment of the court below was as follows: "This cause coming on to be heard before his Honor, E. H. Cranmer, judge presiding, and a jury, at the April Term, 1937, of the Pitt Superior Court, and being heard, and upon the reading of the pleadings and argument of counsel for plaintiffs and defendants, it appearing to the court that the deed from M. L. Martin and others to the defendant John W. Martin, of record in Book I-4, at page 505, of the Pitt County public registry, was void for the reason that same was not acknowledged in the manner provided for by law, as set out in C. S., 2515. Now, therefore, it is, upon motion of plaintiff, ordered, adjudged, and decreed that the plaintiffs W. W. Martin and Callie M. Beach, together with John W. Martin, Lela Fleming, Katie Beach, John D. Martin, C. W. Martin, and H. W. Martin are owners in fee of a one-fifth undivided interest in and to the land described in the complaint, subject only to the life estate of their father, J. W. Martin, as tenant by the curtesy thereon. That the defendant W. J. Bundy, trustee, be and he is hereby forever restrained from selling the reversionary interest in the said one-fifth undivided interest in said tract of land to satisfy the lien of the deed of trust of record in Book S-18, at page 306, of the Pitt County public registry. It is further ordered and adjudged that the defendants Jno. W. Martin, W. J. Carson, Baugh Sons Co., and W. J. Bundy, trustee, pay the costs of this action, to be taxed by the clerk. It is further ordered and adjudged that the said deed of trust as to the four-fifths undivided interest in favor of John W. Martin and as to the life estate of John W. Martin upon the remaining one-fifth undivided interest be and the same is hereby foreclosed, etc. . . . And this matter is retained for the further orders of the court with respect to the sale of the interest herein directed to be sold, and for no other purpose.
 E. H. CRANMER, Judge Presiding."
The defendants W. J. Bundy, trustee, John W. Martin, W. J. Carson, and Baugh Sons Co. excepted, assigned error to the foregoing judgment, and appealed to the Supreme Court. *Page 442 
The exceptions and assignments of error of appealing defendants are as follows: "(1) For that the pleadings raised issues of fact that were material to the rights of the defendants, and under the law had to be passed upon by a jury, and in taking the case from the jury and signing the judgment, as he did, the court deprived the defendants of their rights under the law and the Constitution. (2) That the answers of the defendant appellants all alleged that the land in question was a part of the W. G. Whichard, deceased, land, and that it was divided by mutual agreement by and between his heirs and John W. Martin, the said John W. Martin having purchased the share and interest of Ashley Whichard, a son and heir of W. G. Whichard. That quitclaim or allotment deeds were passed between the said heirs, including John W. Martin, who had purchased the share of Ashley Whichard. That M. L. Martin and the other heirs of W. G. Whichard joined in a quitclaim deed or allotment deed to John W. Martin and releasing and assigning to him Lot No. 1 of the W. G. Whichard land; and the said John W. Martin and the other heirs of W. G. Whichard joined in a quitclaim deed or allotment deed to M. L. Martin alloting and releasing to her Lot No. 4 of the W. G. Whichard land. That the Ashley Whichard deed and the said two quitclaim or allotment deeds are copied and attached to the answers of W. J. Bundy, trustee, and also Baugh Sons Co., and marked Exhibits A, B, and C, as shown in the record. That the complaint alleges that the land in question, the land which the plaintiffs are claiming an interest in, to be Lot No. 1 in the division of the lands of W. G. Whichard, and with said allegation in the complaint, and the allegations above referred to in the said answers . . . the court was in error in entering judgment without a verdict of the jury. (3) For that it is alleged that Lot No. 4 of the W. G. Whichard land was allotted to M. L. Martin, and, as alleged in the answers of the appellants, that John W. Martin and the other heirs of W. G. Whichard made and executed a quitclaim deed or allotment to M. L. Martin for said Lot No. 4, and that she took charge and possession of the same and more than ten years thereafter conveyed it to J. J. Jones; and they further pleaded that in so doing she ratified and approved said division and the said quitclaim division deeds or allotments, and pleaded her said action as an estoppel against the plaintiffs and the other children of M. L. Martin to claim or hold any of the land in controversy or Lot No. 1; and the judgment signed by the court ignored said plea of estoppel, and this was error. (4) For that the judgment signed ignored the *Page 443 
statute of limitations pleaded by the defendants, appellants, and deprived them of said plea, and this was error. (5) For that in addition to the reasons above set out why the said judgment so signed was erroneous, the defendants, appellants, say that the court placed the wrong construction upon the purported deed of M. L. Martin and others to John W. Martin, the deed or paper writing in question; for that he construed and treated it as a deed of bargain and sale conveying the land to John W. Martin, when in fact and in truth it was only a partition allotment and located and described his interest in severalty and conveyed nothing; for his title was derived by his deed from Ashley Whichard and wife, and therefore the probate to said purported deed or paper writing did not violate C. S., 2515, or other requirements of the law."
On the defense, set up by the appealing defendants, certain material facts were alleged. These facts were not tried by a jury, nor found by the court below by consent and a jury waived. The defenses set up were germane, and if found to be true were valid and would defeat the plaintiffs and the claim of the others.
N.C. Code, 1935 (Michie), sec. 2515, is as follows: "No contract made between husband and wife during coverture shall be valid to affect or change any part of the real estate of the wife, or the accruing income thereof, for a longer time than three years next ensuing the making of such contract, or to impair or change the body or capital of the personal estate of the wife, or the accruing income thereof, for a longer time than three years next ensuing the making of such contract, unless such contract is in writing and is duly proved as is required for conveyances of land; and upon the examination of the wife, separate and apart from her husband, as is now or may hereafter be required by law in the probate of deeds of femescovert, it shall appear to the satisfaction of such officer that the wife freely executed such contract, and freely consented thereto at the time of her separate examination, and that the same is not unreasonable or injurious to her. The certificate of the officer shall state his conclusions, and shall be conclusive of the facts therein stated. But the same may be impeached for fraud as other judgments may be."
In Caldwell v. Blount, 193 N.C. 560 (562-3), it is written: "It has been uniformly held by this Court that the deed of a wife, conveying land described therein to her husband, is void unless there is attached or annexed to said deed the certificate of the probate officer as required by statute . . . (P. 563.) No deed from a wife to her husband, conveying her land to him, is valid unless the officer who certifies that he privately examined the wife, as required by statute, shall also state in his certificate his conclusions that said deed is not unreasonable or injurious to her." Foster v. Williams, 182 N.C. 632. See C. S., 3351. *Page 444 
Const. of N.C. Art. X, sec. 6, is as follows: "The real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations, or engagements of her husband, and may be devised and bequeathed and, with the written assent of her husband, conveyed by her as if she were unmarried." C. S., 2506.
C. S., 2507 (Martin Act, Pub. Laws 1911, ch. 109), is as follows: "Subject to the provisions of section 2515 of this chapter, regulating contracts of wife and husband affecting corpus or income of estate, every married woman is authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried, but no conveyance of her real estate shall be valid unless made with the written assent of her husband as provided by sec. 6 of Article X of the Constitution, and her privy examination as to the execution of the same taken and certified as now required by law." The effect of the Martin Act (this section), is to take married women out of the classification which the law recognized prior to its enactment and to make them, with respect to capacity to contract, sui juris. This section should be held to mean what it plainly says, that, except as to contract with her husband, in which the forms required by section 2515 must still be observed, and except in conveyances of her real estate, in which case her privy examination must still be taken and her husband's written consent had, a married woman can now make any and "all contracts, so far as to affect her real and personal property," in the same manner and to the same effect as if she were unmarried. Warren v. Dail, 170 N.C. 406 (410);Lipinsky v. Revell, 167 N.C. 508; Everett v. Ballard, 174 N.C. 16 (18);Brown v. Brown, 205 N.C. 64. This section practically constitutes married women free traders as to all their ordinary dealings.
In Harrison v. Ray, 108 N.C. 215 (216-17), it is said: "The grantors were not conveying any additional estate or interest to Oakley Harrison. He had bought nothing, and they were not making him a present of anything. The deed only assigned to him in severalty and by metes and bounds what was already his. The grantors conveyed no part of their shares. They had no interest in the share embraced in the deed to Oakley Harrison, and could convey no interest therein to him or any one else. It was his by the conveyance from his father. He received no title nor estate by virtue of the deed from his brothers and sisters, nor could his wife. His direction to the other heirs (if given) to convey to himself and wife could not have the effect to make the deed a conveyance of anything to his wife when it was not such as to himself. *Page 445 
The title being already in him, the deed merely designated his share by metes and bounds and allotted it to be held in severalty. No title passed by the deed, nor by any of the deeds. `Partition makes no degree. It only adjusts the different rights of the parties to the possession. Each does not take the allotment by purchase, but is as much seized of it by descent from the common ancestor as of an undivided share before partition.' Allnatt on Partition, 124. The deed of partition destroys the unity of possession, and henceforth each holds his share in severalty, but such deed confers no new title or additional estate in the land. 2 Bl., 186. Hence it is that in partition, whatever the form of the deed, there is an implied warranty of title by each tenant to all the others. Huntley v. Cline,93 N.C. 458." Jones v. Myatt, 153 N.C. 225 (230); Millard v. Smathers,175 N.C. 60; Valentine v. Granite Corp., 193 N.C. 578 (580-1);Insurance Co. v. Dial, 209 N.C. 339 (348).
In Collier v. Paper Corp., 172 N.C. 75-6, we find: "Mrs. Collier and those claiming under her have been in continuous and exclusive possession since aforesaid partitions now nearly forty years. A parol partition is not void, but merely voidable. It is not necessary to pass on the point whether the plat made by the surveyors at the instance of the executors when they executed the power, conferred by the will, to make partition, and which plat was adopted by them, take this out of the class of parol partitions. The partition is valid, since it has been acquiesced in for more than twenty years. Treating this as an oral partition, `Any evidence is admissible which tends to show either ratification of the partition or conduct from which the parties seeking to disregard it are held to be estopped from so doing.' 30 Cyc., 164. . . . The plaintiffs and defendants have been in undisputed possession of the tracts as allotted by the executors in execution of the power in 1877. In Rhea v. Craig, 141 N.C. 602, it is said: `Where, after a parol partition between the tenants in common, who severally took possession, each of his part, and have continued in the sole and exclusive possession for twenty years without making any claim or demand for rents, issues or profits by any of them upon the others, but recognizing each other's possession to be of right and hostile, the law will presume an actual ouster and a supervening adverse possession, as much so as where the possession was of the whole instead of a part only.'" Roberts v. Ins. Co., ante, 1.
Conceding, but not deciding, that the partition deed made by M. L. Martin to John W. Martin, her husband, for lot 1 was inoperative under section 2515 supra, John W. Martin was the owner of one-fifth (1/5) interest in the 500 acres of land purchased from Ashley Whichard on 7 December, 1882, in his own right. *Page 446 
N.C. Code, 1935 (Michie), sec. 430, reads: "No action for the recovery or possession of real property, or the issues and profits thereof, shall be maintained when the person in possession thereof or defendant in the action, or those under whom he claims, has possessed the property under known and visible lines and boundaries adversely to all other persons for twenty years; and such possession so held gives a title in fee to the possessor in such property against all persons not under disability."
If by parol there was a division in the fall of 1885 of the W. G. Whichard land, and John W. Martin went into possession of the land at that time and he and others who claim title under him have been in possession of same for 20 years, in accordance with section 430 supra, he has a statutory fee simple title. Owens v. Lumber Co., 210 N.C. 504; S. c., ante, 133;Berry v. Coppersmith, ante, 50. Then again M. L. Martin, wife of John W. Martin, went into possession of her one-fifth (1/5) interest, Lot No. 4, in her own right under the partition deed or by parol division in 1885, and had possession of same and sold same to J. J. Jones on 15 January, 1895. The parties cannot now be placed in statu quo. From the long period of delay on the facts developed the doctrine of estoppel by laches may apply.Sprinkle v. Holton, 146 N.C. 258 (266).
The principle of estoppel is thus stated: "The doctrine is founded upon equity and good conscience; and the party claiming the estoppel must have done something, paid something, or in some way changed his position for the worse, so that he will not be left or cannot be put back in his former condition, in case the other party is allowed to assert his original rights." Story's Eq. Jur., Vol. 3, sec. 1898 (14 ed.); Trust Co. v. Wyatt,191 N.C. 133 (136); Oil Co. v. Jenkins, ante, 140 (144-5).
M. L. Martin, wife of John W. Martin, had only an inchoate right of dower in Lot No. 1, when she died this right was extinguished. Since M. L. Martin received the land by parol partition, and with her husband conveyed it prior to the Martin Act, the application of the doctrine of estoppel to her, except where the doctrine of estoppel by laches prevails, must be determined in the light of the law as it existed prior to the Martin Act,supra. The full doctrine of estoppel did not apply to a married woman because she was not sui juris and was under disability, but she could bind herself by way of estoppel by some affirmative act of fraud upon which a prudent man might rely to his injury in matters affecting her rights.Towles v. Fisher, 77 N.C. 443; Kelly Contracts of Married Women, p. 122; Bishop, the Law of Married Women, Vol. 2, p. 395. The rule was stated bySmith, C. J., in Weathersbee v. Farrar, 97 N.C. at p. 111, as follows: "Unless the element of fraud is *Page 447 
present in the declarations or conduct of a woman under coverture, upon the faith of which another has acted to his own injury, and which may reasonably be supposed to induce him to act, she cannot lose any of her just rights of property."
Even after the enabling statute there is authority to support the view that although estoppel applies generally to women, still it does not apply with reference to her claim of real estate unless there has been actual fraud on her part. Harris, Contracts by Married Women, p. 435. However the more general and better view is that "to the extent that new enactments liberate and remove her disabilities and enlarge her powers as a feme sole, and she commits acts of estoppel, they may estop her if sought to be enforced against her." Cord, Legal and Equitable Rights of Married Women, 2nd ed., sec. 1287, and cases cited in notes 2 and 3 thereunder; Bishop, Law of Married Women, supra, p. 398, citing with approval Bodine v.Killeen, 53 N.Y., at p. 96, where Allen, J., concludes, "The reason of the rule ceasing with the removal of the incapacity, the rule fails." Kelly, Contracts of Married Women, supra, pp. 122-3.
If M. L. Martin herself was not estopped, under the prior law, those succeeding to her title cannot now assert her rights as they have by their own laches permitted another doctrine to become operative. If the possession of the land has been held adversely for twenty years, in accordance with the statute, C. S., 430, supra, they cannot now claim the land.
For the reasons given the judgment of the court below is
Reversed.